**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                          )
LG ELECTRONICS U.S.A., INC. AND           )
LG ELECTRONICS, INC.,                     )
                                          )
                    Plaintiffs,           )
                                          )
v.                                        )    Civil Action No. 09-5142 (GEB-ES)
                                          )
WHIRLPOOL CORP. AND ANCHOR                )      **MEMORANDUM OPINION**
APPLIANCE, INC.,                          )    **REDACTED PUBLIC VERSION**
                                          )
                    Defendants.           )
_____)


**BROWN, Chief Judge**

    This matter comes before the Court on Whirlpool Corporation's appeals (D.E. 121,

145, and 146) from Magistrate Judge Esther Salas' decision finding that certain transcript

designations were confidential and that certain of LG's responses to requests for admissions

were appropriate and should not be deemed admitted.  (D.E. 134).[1]  LG Electronics U.S.A., has

opposed the appeals.  The Court has reviewed the parties' submissions and decided the motion

without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth

below, Judge Salas' decision is affirmed in part and reversed in part.

_____

[1] Whirlpool filed the first appeal of Judge Salas' order prior to the order's entry on the docket.  However, in the
interest of facilitating the progress of the case, the Court will consider the motion despite that procedural defect.

## I.    BACKGROUND

This is a patent infringement case involving four patents directed toward certain refrigerators and refrigerator systems.  Plaintiffs filed this case on October 7, 2009, and the case proceeded without relevant event until, on June 25, 2010, November 3, 2010, and January 14, 2011, Whirlpool sought inter-partes reexaminations challenging the validity of the patents before the Patent Office ("PTO").  (*See* D.E. 67, 73, 75).  Since that time, the parties have conducted parallel proceedings before the PTO and this Court.  The parties have frequently cited the current proceedings before the PTO to this Court, and this appeal arises, in part, because Whirlpool wishes to disclose to the PTO information obtained in this action.

The parties recently stipulated to a protective order.  In the section of the order setting forth its purposes, the order cites concern about the confidentiality of certain information:

> Whereas [LG] and [Whirlpool] are currently litigating the present patent infringement action, which is likely to involve discovery of documents and testimony containing trade secrets and other confidential research, development, and commercial information of the parties to this action and third parties . . . and commercially sensitive information relating to business strategies, manufacturing and distribution capabilities, costs, pricing, profitability, customers, suppliers, and other business and financial data.

(Confidentiality Order at 1; D.E. 119).  The order explains that this concern is based upon an irreparable harm to the legitimate business interests of the parties if third parties are able to access this information.  (*Id.* at 2).  The order further explains that information designated by the producing party as confidential shall remain so designated until a challenge results in a court order removing the designation. (*Id.* at 3, 4, 7).  However, the order nonetheless requires that the burden of showing that the designated material is confidential remains on the party who makes that designation.  (*Id.* at 3, 4, 7, 12).

2

The Confidentiality Order further explains that its terms apply where a party in good faith represents that the information is not in the public domain and it:

> contain[s] any trade secrets within the meaning of the Uniform Trade Secrets Act or other confidential or proprietary information, including, without limitation, financial, strategic, research, development, manufacturing costs or other costs of doing business, technical, personal or commercial information, or any other information not normally revealed to third parties or, if revealed to third parties, is such that the Producing Party would require that the material be held in confidence.

(*Id.* at 4-5).  The order sets forth that the receiving party shall use any information designated Confidential for no other purpose other than the preparation, trial and appeal of this case, except based on further order of the Court.

## II.   DISCUSSION

### A.   Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72(a), and Local Civil Rule 72.1(a), a United States Magistrate Judge may hear non-dispositive motions.  "A magistrate judge's ruling on a non-dispositive matter such as a discovery motion is entitled to great deference and is reversible only for abuse of discretion."  *Eisai Co. v. Teva Pharms. USA, Inc.,* 629 F.Supp.2d 416, 433–34 (D.N.J. 2009).  On appeal, a district court may modify or set aside a magistrate judge's non-dispositive order only if the ruling was "clearly erroneous or contrary to law."  Fed.R.Civ.P. 72(a); L. Civ. R. 72.1(c)(1)(A); *see also Haines v. Liggett Group Inc.*, 975 F.2d 81, 91 (3d Cir. 1992); *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1113 (3d Cir. 1986).

A ruling is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.*, 131 F.R.D. 63, 65

3

(D.N.J. 1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92

L.Ed. 746 (1948)).  A magistrate judge's order is contrary to law "when the magistrate judge has

misinterpreted or misapplied the applicable law." *Doe v. Hartford Life & Accident Ins. Co.*, 237

F.R.D. 545, 548 (D.N.J. 2006) (citing *Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.*,

106 F.Supp.2d 761, 764 (D.N.J. 2000)).  While a magistrate judge's decision typically is entitled

to deference, "a magistrate judge's legal conclusions on a non-dispositive motion will be

reviewed de novo." *Eisai*, 629 F.Supp.2d, 434.

###### B.      Analysis

Whirlpool appeals two aspects of Judge Salas' rulings below.  First, Whirlpool appeals

Judge Salas' decision that LG's responses to Requests for Admissions ("RFAs") were

appropriate.  Second, Whirlpool appeals Judge Salas' determination that certain portions of the

Sung Hoon Chung deposition are confidential.  This Court finds that Judge Salas did not abuse

her discretion in finding LG's responses were appropriate and should not be deemed admitted

and on several of the confidentiality designations, but disagrees with Judge Salas' application of

the law when dealing with three of the passages designated as confidential.

###### 1.    *RFA Responses*

According to Federal Rule of Civil Procedure 36,

> (1) Scope. A party may serve on any other party a written request to admit, for
> purposes of the pending action only, the truth of any matters within the scope
> of Rule 26(b)(1)
>
>         . . . .
>
> (4) Answer. If a matter is not admitted, the answer must specifically deny it or
> state in detail why the answering party cannot truthfully admit or deny it. A
> denial must fairly respond to the substance of the matter; and when good faith
> requires that a party qualify an answer or deny only a part of a matter, the
> answer must specify the part admitted and qualify or deny the rest. The
> answering party may assert lack of knowledge or information as a reason for

> failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.
>
> . . . .
>
> (6) Motion Regarding the Sufficiency of an Answer or Objection. The requesting party may move to determine the sufficiency of an answer or objection. Unless the court finds an objection justified, it must order that an answer be served. On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served.

In other words, a response is proper if it "fairly respond[s] to the substance of the matter." A partial denial is proper if "good faith requires the party qualify an answer or deny only party of the matter," and if it specifies the portions of the RFA that it agrees with and the portions that it denies.

Here, Whirlpool's RFA Nos. 64-66, 69, 70, and 72 request that LG admit that "LG did not Disclose [a certain reference] to the United States Patent and Trademark Office in connection with the prosecution of [certain patent applications]." Whirlpool defined "Disclose" to mean "bringing a patent, publication, application, or other information to the attention of the United States Patent and Trademark Office during the pendency of a patent application by listing the patent, publication, application, or other information in an Information Disclosure Statement submitted to the United States Patent and Trademark Office." (Whirlpool RFA at 4).

LG responded as follows:

> LGE obejcts [sic] to the definition of the term "Disclose." Without waiving and except as objected to in the foregoing objections and General Objections, LGE responds that the [certain reference], contained in Exhibit A2, was not listed in an Information Disclosure Statement submitted to the United States Patent and Trademark Office during the prosecution of the [certain patent] applications. Except as stated in its response, LGE denies this request.

5

(LG's response to RFA at 25-29).  Essentially, LG agreed that no person raised the references to the patent office; however, it objected to the definition of "disclose."

Judge Salas was well within her discretion to find that this was an appropriate response. LG's response fairly responded to the substance of the matter by explaining that the references were not listed in an Information Disclosure Statement ("IDS") and thus were not directly considered by the Patent Office.  Further, Judge Salas' determination that LG could parse portions that it admitted and portions it would not admit was not an abuse of discretion.

 While LG's response splits a hair pretty finely, it had good reason to be careful.  The word "disclose" implies a duty to disclose.  However, LG itself had no such duty – it was only the people involved in the patent prosecution that had such a duty.  *See* 37 C.F.R.1.56(c). Further, a person is only under such a duty to disclose to the PTO if the material is *known* to such person and is *material* to patentability.  *See* 37 C.F.R.1.56(a) (". . . a duty to disclose to the Office all information known to that individual to be material to patentability . . .").  LG's admission that the people involved in the prosecution of this patent did not provide these references in an IDS does not also require LG to imply that it *should have* provided them.  LG admitted these statements to the extent that was appropriate and Whirlpool may use that admission at trial.  As such, Judge Salas did not abuse her discretion when she found that these responses were appropriate.  *See Eisai Co.,* 629 F.Supp.2d at 433–34.[2]

---

[2] This Court agrees that LG has written the responses in the passive voice, which makes it seem as if the company had little to do with the patent and could have had no duty to disclose.  However, in light of the fact that LG itself had no duty of disclosure (only those *persons* involved in the patent prosecution), Judge Salas' ruling was not an abuse of discretion.

## 2. *Confidentiality Designations of the Chung Deposition*

However, in light of LG's burden to show that the designated portions of the deposition were confidential, it clearly failed to make such a showing on some of the passages designated. "In order to override the common law right of access, the party seeking the closure of a hearing or the sealing of part of the judicial record bears the burden of showing that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *In re Cendant Corp.*, 260 F.3d 183, 194 (3d. Cir. 2001) (internal quotations omitted). "In delineating the injury to be prevented, specificity is essential. Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient." *Id.* (internal citations and quotations omitted). In determining access, "[t]he strong common law presumption of access must be balanced against the factors militating against access. The burden is on the party who seeks to overcome the presumption of access to show that the interest in secrecy outweighs the presumption." *Id.*

LG's argument in an attempt to carry this burden was manifestly insufficient, as it consisted entirely of "[b]road allegations of harm, bereft of specific examples or articulated reasoning," which is insufficient under Third Circuit law. *See In re Cendant Corp.*, 260 F.3d at 194. The only argument LG advanced to carry its burden of showing harm was that:

> Whirlpool's request is contradicted by the transcript itself, which plainly reveals LGE's nonpublic and internal "trade secrets [and] other confidential or proprietary information, including . . . strategic, research, [and] development . . . . information."

(Joint Letter Brief, D.E. 116 at 7). This is exactly the type of broad statement of harm that is insufficient to carry the burden of harm – LG cites no specific harm, but merely conclusorily states that the transcript "plainly reveals" the confidential information.

7

The declarations supporting these statements in LG's motion to seal and in its letter to Judge Salas fare somewhat better, but in some cases the confidential issues alleged are not borne out in the passages designated. Jae-Oak Kho's declaration in support of a discovery letter to Judge Salas states that

> The portions of [the deposition] that were designated confidential and/or proprietary to LGE – specifically, highly-sensitive information concerning design and/or research information relating to the development of LGE's French door refrigerators, including the contributions of specific LGE personnel to such work and the areas of respective expertise. Such information is highly confidential.[3]

(D.E. 99-2 at ¶7). The Court agrees that information concerning the design of commercial embodiments would create prejudice if disclosed to the public. Further, the Court agrees that the contributions and areas of expertise of people working on the project might ease the burden of a competitor attempting to reverse engineer LG's refrigerators because the competitor would know what type of team it should assemble. However, in several of the passages, these concerns are not borne out.

### a.    *Passage 1*

The statements, and context where necessary, are reproduced below. The statements that LG designated as confidential are highlighted, whereas the context required appears without highlighting.

> Q:    Okay. How long did this interview with Mr. Lee and Mr. Kim last?
> A:    I can't remember exactly, but as far as I remember, it was around 30 minutes to 50 minutes.

---

[3] Jae-Oak Kho's declaration in support of the motion to seal (D.E. 103-2), reveals nothing about why the information designated would injure LG if disclosed publicly. The declaration merely states that LG has valuable trade secrets that are maintained as confidential in the competitive refrigerator market. (*Id.*). However, the mere fact that LG has valuable trade secrets does not mean that it can designate Mr. Chung's deposition confidential if he quotes its public stock price.

Q:     Okay.  During the course of that meeting did you all discuss any specific problems related to the design of ice and water delivery systems in refrigerators?

A:     No.

Q:     Do you have a general understanding of the invention that's described in the '665 patent?

A:     Yes.

Q:     Do you understand the problem or problems that this invention is supposed to solve?

A:     I believe, yes.

Q:     Could you state for us generally what you thought those problems were?

A:     I think I need to see this, because it was more than seven years ago and I can't remember this patent exactly.

 . . . . [long colloquy between attorneys regarding the protective order]

A:     So this patent is about the refrigerator that has a freezer in the bottom and the refrigerator part in the up side, and there is icemaker in the refrigerator part, and for the icemaker to make ice, it needs [] cold air.  It should be sent from the freezer part.

Q:     Right.

A:     And this patent is about how to send the cold air from the bottom freezer to the upper refrigerator part, specifically [the] ice maker area.  So it's like general idea[] and the compilation of the refrigerator of this type.

Q:     Okay.  And how long --- I'll try to put together a clear question here.  When was the first time you started working on solutions to this problem.

A:     I can't remember because there were things at work I was doing, so I can't remember exactly when I started thinking about how to solve this problem.

    . . . .

Q:     So there's no specific event that stands out in your mind as to when you started working on the solution to these problems of cold air flow in these types of refrigerators?

A:     I can't remember because as I told you there were a lot of things happening at the same time.

Q:     Okay.

       ATTORNEY GENE LEE:  I also object for lack of foundation.

       ATTORNEY SPEARS:  Okay.

Q:     Do you know if this was a problem that you were assigned within the first month of your work at LG?

A:     I don't think so, because as I told you, I was acquiring knowledge to do this kind of job at the very first months, which according to Exhibit One, I joined LG Electronics on May 15th.  So the first was 15 days, two weeks, so I was kind of getting familiar with the environment of LG Electronics.

Q:     Does the '665 patent generally describe a system or configuration that solves this problem of cold air flow that you identified?

A:     As far as I know, yes.

(Chung Depo. Tr. at 17-21).  LG has failed to explain what could possibly be confidential about when Mr. Chung began working on the invention.  This passage discloses no trade secret or design information of any kind that any competitor could use to gain a competitive advantage or to reverse engineer the product.  Indeed, LG has not designated Mr. Chung's start date as confidential (*see id.* at 11) and this Court cannot imagine a legitimate reason that the date he started work on the invention would give competitors an advantage they do not already have.  Further, the fact that Mr. Chung contributed to the invention is not confidential –the patent lists him as an inventor, which means that he contributed to the conception of at least one claim.

LG asserts that disclosure of this information is prejudicial because Whirlpool wishes to submit the information to the PTO.  LG argues that such a use by Whirlpool is improper under the Confidentiality Order.  This argument fails to overcome the public's right to this information for two reasons: (1) the disclosure of the information is not a legitimate commercial injury in light of the duty of many of LG's agents to disclose this material information to the PTO—it is not proper for LG to use a confidentiality designation to keep this information from those agents and the PTO; (2) even though the Confidentiality Order prevents Whirlpool from using even non-confidential information outside of the litigation, the constraints on Whirlpool are irrelevant to whether the public should have access to the passage.

First, each and every person at LG who is involved in the prosecution of the reexamination application is under a duty to disclose material information to the PTO.  37 C.F.R.§ 1.56 (c).  The date of invention is material because it may be inconsistent with one of the arguments LG's prosecution team has made to the PTO on reexamination.  *See* 37 C.F.R. § 1.56 (b)(2) (information inconsistent with a position taken before the PTO is material).   LG has

10

argued to the PTO that the disclosure of the '665 patent was conceived in early January of 2003. (July 14, 2010 response at 38; D.E. 139-1). However, Mr. Chung testified that he did not start until May 2003, and did not start working on the patent until two weeks later. Mr. Chung's listing as inventor requires that he contributed to the conception of at least one of the claims of the patent. *See* MPEP 2137.01 (conception allows a person to be listed as an inventor, reduction to practice is irrelevant); *Fiers v. Revel*, 984 F.2d 1164, 1168, 25 USPQ2d 1601, 1604-05 (Fed. Cir. 1993) (same). As such, this information may be inconsistent with the position that LG's prosecution team took on reexamination because Mr. Chung could not have conceived a portion of one of the claims as early as LG alleges all of the claims were conceived. Losing the ability to shield this information from its prosecution team and ultimately the PTO can hardly be considered a legitimate injury that was contemplated by protective orders.[4]

Second, LG improperly focuses the inquiry on Whirlpool's intent to use the information in an area other than this litigation. On the one hand, the Confidentiality Order does explain that, absent a Court order, even non-confidential information obtained in discovery may not be used for any purpose other than this litigation. (*Compare* Confidentiality Order at ¶7(a) *with* ¶7(b)). On the other hand, this argument presumes that the information is *non-confidential*. The public's right to access the information is independent of Whirlpool's ability to use it for a purpose prohibited by the Confidentiality Order. Indeed, Whirlpool's appeal is of Judge Salas' confidentiality designation, not an application to be relieved of the dictates of the Confidentiality Order.

---

[4] The Court makes absolutely no finding on whether the failure to disclose this information would give rise to inequitable conduct under *Therasense, Inc. v. Becton, Dickinson and Co.*, ___ F.3d ___ (Fed. Cir. 2011).

In sum, the only possible injury resulting from the public disclosure of this passage is one that is not properly protected by confidentiality, which guards against only the loss of legitimate business interests. LG clearly failed to show this information was confidential. Therefore, Judge Salas erred in applying the law, which does not contemplate confidentiality acting as a barrier to disclosing information to the PTO when the patentee has a duty to disclose that information. The Court will unseal this portion of the transcript and allow access of that portion to the public.

Whirlpool's ability to use that non-confidential information outside this litigation and disclose it to the PTO is a separate issue, and, without an explicit application, the Court sees no reason to disturb the status quo established in the Confidentiality Order.

### b.    *Passage 2*

The second passage LG designated as confidential deals with Mr. Chung listing the elements of the patent:

> Q:    Okay. Are there any specific components --- of these components to the refrigerator in the '665 patent, are there any specific components that you came up with either alone or in combination with your co-inventors?
>     ATTORNEY GENE LEE: I object to the question as vague and ambiguous. But go ahead.
> A:    *If I recall this '665 patent, can I recall it to my memory if there's any parts? Is that your intention?*
> Q:    Yes, that's it.
> A:    Okay. So there is – as I told you from the first part of this conversation, I can remember ice maker and flow duct and refrigerator compartment and freezer compartment. I'm not sure if the freezer compartment or the refrigerator compartment can be called a part and there is an ice maker and ice storage bin.





(Chung Depo. Tr. at 26-28) (emphasis added).

There is nothing remotely confidential about Mr. Chung's first answer. Indeed, Mr. Chung appears to be answering the question of whether there are parts of the '665 patent, and lists them in response. These are disclosed in the patent, which is a public document, and are not confidential.

The rest of the passage relates to the contributions of Mr. Chung to the elements of the patent and the workings of the group. While it is difficult to conceive what is earth-shattering about the fact that ███████████████████████████, it is remotely possible that this information could be used by a competitor to reverse engineer the commercial embodiment. As such, for this portion, Judge Salas did not abuse her discretion.

### c.    Passage 3

Moving to the third passage at issue, the Court agrees with Judge Salas' finding that this

passage is confidential.   Specifically, this passage contains information about what is potentially

commercial embodiment of the patent:

> Q:    Okay.  At column ten between lines 24 and 31, did you see reference to a damper?
> A:    Yes.
> Q:    Did anything in that section of the patent describe how the damper is specifically configured to regulate air flow?
> A:    In general I know there is a damper, but I can't remember how this one is specifically configured.
> Q:    And this portion of column ten didn't describe how it was specifically configured, did it?
> A:    I am not sure.





(Chung Depo. at 37-41).  The specificity providing exactly which components LG used to "configure" the damper is far beyond what the patentee disclosed in the patent.  The patent discloses merely what the damper should be "configured" to do; it does not disclose the specifics of how it is accomplished.  This testimony gives information beyond that in the patent, information that may be the commercial embodiment of the refrigerator.  Thus, it is confidential and Judge Salas did not err, let alone abuse her discretion.

### d.    *Passage 4*

The fourth passage that LG designated as confidential deals with a potential contract between LG's trial counsel, Ropes & Gray, and Mr. Chung:

> Q:    Okay.  I'd like to go back to your resume, which is Exhibit Two.  And on page five, yeah, that's the one, under work experience you've indicated that you've worked as a part-time technical consultant to Ropes & Gray; correct?
> A:    This is not correct information.

Q:    Okay.  All right.  Please explain your answer.

A:    As far as I remember late August, I received a phone call from LG Electronics.

[Caution given to witness not to disclose information subject to attorney-client privilege]

A:    Okay.  So basically I was offered this position, and I was willing to accept this position.  And when I was about to sign the contract form, I realized that I'm not allowed to work off . . . campus and I . . . declined.  And before I decline[d], I correct[ed] my CV, but I re-corrected it after that.



(Chung Depo. at 41-44).

16

The Kho declaration does not even address the information in this passage.  It never mentions that the contracts of counsel are confidential (as opposed to privileged) information or how the disclosure of such information might harm LG's commercial interests.  (*See* D.E. 99-2 at ¶7).  The Kho declaration mentions only that the design, research, and the specialties and specific contributions of LG's employees are confidential.  (*See id.*).

However, in light of the deference owed to a magistrate on discovery matters and the fact that internal contracts are generally confidential, this Court finds that Judge Salas did not abuse her discretion.  Thus, the Court affirms Judge Salas' finding that this information is confidential.

### d.       Passage 5

The next passage that LG designated as confidential dealt with what scientists at LG had accomplished prior to Mr. Chung's arrival.







(Chung Depo. at 49-54).  The Court finds that Judge Salas did not abuse her discretion in finding that this passage was confidential.

This passage does not directly deal with elements of any of LG's commercial embodiments or trade secrets.  However, it does deal with the specific background of Mr. Chung and the other scientists who worked on the project.  Further, it provides the portions of the project that LG asked Mr. Chung, with his specialized knowledge, to focus on.  This is sufficiently confidential because competitors looking to solve the same problems LG solved in its commercial embodiment would benefit from selecting a similar team to that which LG selected.  As such, the Court affirms Judge Salas' ruling.

### e.  *Passage 6*

The final confidential designation at issue is related to Mr. Chung's contribution beyond that of the prior work done by the previous inventors.

Q:    Okay.  When Mr. Lee was providing you with background information that you discussed with Attorney[5] Mr. Lee, did he suggest to you that he had solved the problems of air flow that are addressed in the '665 patent?

. . . . [Objection omitted]

A:    You mean my contribution to solve this problem?

Q:    Did Mr. Lee say, Mr. Chung, we have solved these problems with air flow when he was providing you with his background information?

. . . . [Objection omitted]

A:    I'm not sure about that.

Q:    Okay.  Insofar as you['re] concern[ed], problems with air flow addressed in the '665 patent, those problems were solved by you in combination with your co-inventors in the patent?

. . . . [Objection omitted]

A:    Your question is, did we – I mean together, we inventors, did we actually solve this problem using this patent?

Q:    Uh-huh (yes).

A:    I have no idea because I'm not sure this patent is used or not in the commercial product.

Q:    Does this patent contain any advances over the background information that Myung Ryul Lee provided you?

A:    I cannot remember exactly.  I believe this was a little more specific than [what] he told me.

(Chung Depo. 55-57).   This passage does not contain confidential material.  Indeed, it has little, if any content.  Mr. Chung does not have answers to any of the questions other than that the patent is more specific than the information that he was given in an interview for the position. The fact that the interview took place was already established in the non-confidential portions of the record, (*id.* at 17), and this testimony gives no more information about the substance of the meeting.  As is evident from the question, the air-flow solutions are set forth in the patent itself as well as non-designated portions of the transcript.  (*See id.* at 19).

Further, the fact that the patent is "more specific" than the discussion cannot be confidential information.  The Court cannot imagine what use a competitor could put this

---

[5] The Court concludes that this reference to "Attorney" was made in error and that "Attorney Mr. Lee" Refers to Myung Ryul Lee.

information to in reverse engineering products or in competing with LG.  As a result, the Court

finds that Judge Salas' ruling that this information was confidential was an abuse of discretion

because LG manifestly did not carry its burden of showing harm as a result of disclosure.


**III.      CONCLUSION**

For the foregoing reasons the Court affirms Judge Salas' ruling that LG's responses to the

RFAs were appropriate but finds that a few of the passages that LG designated as confidential

are not confidential and should be unsealed.


Dated: June 14, 2011


_____/s/ Garrett E. Brown_____
GARRETT E. BROWN, JR., U.S.D.J.